*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MARK L. ECKER TRUST.

GREGG A. ECKER and SCOTT M. ECKER,

        Appellees,

v

KAREN ECKER NICKEL,

        Appellant.

UNPUBLISHED
August 12, 2025
9:26 AM

No. 372683
Emmet Probate Court
LC No. 24-014856-TV

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

This dispute over the administration of the Mark L. Ecker Trust (the Trust) pits a pair of brothers against their two sisters. The parties engaged in protracted litigation over the distribution and management of the Trust, but they seemingly settled most of the trust-administration issues. Appellant Karen Ecker Nickel agreed to the settlement, but then sought to set aside the order memorializing the agreement. The probate court denied Nickel's motion to set aside the order, and Nickel appeals. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Karen Nickel, Kim Martinchek, Gregg Ecker, and Scott Ecker are siblings and the children of Mark L. Ecker and Joyce E. Ecker, both deceased. In 2010, Mark and Joyce created trusts that named Nickel as the primary successor trustee and Martinchek as the secondary successor trustee. The parties to this case are the beneficiaries of those trusts. After their parents' deaths, Greg and Scott became concerned by Nickel's administration of the trusts and, in 2020, sued to remove her as trustee. Nickel was removed as trustee, a postmortem amendment to the trusts was declared void, and Martinchek was appointed successor trustee.[1] In 2023, Gregg and Scott filed suit to

---

[1] Nickel's appeal from the 2020 litigation is pending before this Court in Docket No. 366482.

-1-

remove Martinchek as trustee. The brothers initially brought this case as a civil action by filing a complaint rather than a trust proceeding commenced by the filing of a petition. Nickel pointed out this error in a motion to adjourn the scheduled trial, arguing that she had not received notice of the trial and should be able to participate in the proceedings as an interested party. The probate court ordered Gregg and Scott to amend their pleading by filing a verified petition to replace the initial complaint.

The matter proceeded to trial, but on what was scheduled to be the second day of trial, the parties agreed to the terms of a settlement, which they placed on the record. Relevant to this appeal, the agreement included that Martinchek would resign as trustee and the parties would either agree on a successor trustee or the probate court would appoint one. Additionally, the trustee would assign to Nickel the right to prosecute the appeal from the 2020 litigation in Docket No. 366842, with Nickel being able to seek reimbursement for her legal fees if successful. Nickel— while expressing her unhappiness at the provision specifying the appointment of an independent trustee—eventually agreed to the settlement. A stipulated order was entered reflecting the terms of the settlement. Nickel then moved to set aside the stipulated order and for a new trial, arguing that the stipulated order did not comport with the settlement agreement placed on the record, that the parties were mutually mistaken regarding Nickel's ability to withdraw her legal expenses from the trust as they came due rather than being reimbursed after the appeal was concluded, and that she was coerced into agreeing to the settlement. The probate court denied the motion, found that Nickel's motion to set aside was frivolous, and ordered sanctions against Nickel and her attorney. The probate court later denied Nickel's motion for sanctions against Gregg and Scott and their counsel. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's determination that a settlement agreement is valid, and it reviews a trial court's factual findings for clear error. *Vittiglio v Vittiglio*, 297 Mich App 391, 397-398; 824 NW2d 591 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes" or if it "makes an error of law." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024) (quotation marks and citation omitted). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made," giving special deference "to a trial court's factual findings that are based on witness credibility." *Blackman v Millward*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367240); slip op at 12 (quotation marks and citation omitted). Settlement agreements are contracts, and this Court reviews contractual provisions de novo with the goal of ascertaining and effectuating the intent of the parties. *In re Raymond T Conley Trust*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366180); slip op at 2.

"When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

"A trial court's determination that an action is frivolous is reviewed for clear error." *Bradley v Frye-Chaiken*, 514 Mich 679, 705; ___ NW3d ___ (2024) (quotation marks and citation

omitted). A trial court's exercise of its inherent power to sanction litigants is reviewed for an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 375, 388; 719 NW2d 809 (2006).

## III. MOTION TO SET ASIDE STIPULATED ORDER

Nickel argues that the settlement agreement and stipulated order were invalid or should be invalidated on several grounds, including mutual mistake, violation of the statute of frauds, and lack of consideration. She also argues in the alternative that her agreement to the stipulated order and underlying settlement agreement was coerced, and that Gregg and Scott should have been barred from bringing this action by the doctrine of unclean hands. We disagree.

## A. VALIDITY OF STIPULATED ORDER

Nickel argues that the probate court erred by accepting the settlement agreement and stipulated order as valid, for several reasons. We disagree with her arguments in their entirety.

A party generally may not appeal the merits of a consent judgment or stipulated order unless it contains a reservation of rights. *Jaber v Randall*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 4. In this case, the only reservation of appellate rights in the stipulated order pertains to Docket No. 366482. Therefore, Nickel may not appeal the substantive aspects of the stipulated order. Nevertheless, even if a stipulated order does not contain a reservation of rights, a party may challenge the validity of that order on the grounds that they did not consent to it or that it does not accurately reflect the true intent of the parties. See *In re Pawloski Minors*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372145); slip op at 2-4. Therefore, Nickel may challenge the stipulated order based on an alleged lack of consent. But "[a] change of heart, however sincere, does not undo a knowing release." *Id*. at ___; slip op at 5.

Nickel asserts that the stipulated order is invalid because of a mutual mistake. "Mutual mistake" is one of the few grounds that could support setting aside a settlement. *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015). "But a contract drafted as intended by the parties will not be reformed simply because the parties were mistaken about the contract's legal effect." *Newton v Progressive Marathon Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364569); slip op at 12. Likewise, a settlement agreement may not be set aside merely because a party incorrectly assessed the consequences of the settlement. *Clark*, 309 Mich App at 396. In this case, Nickel argues that the parties incorrectly believed that the stipulated order would not modify the terms of the trusts. It is doubtful that all of the parties and the probate court in fact believed this, but even if true, Nickel's argument is that the parties were mistaken about the *legal effect of* the stipulated order rather than whether the stipulated order, as drafted, accurately recited the parties' agreement, which is not grounds for challenging the validity of the agreement. *Id. Newton*, ___ Mich App at ___; slip op at 12.

Nickel also argues that the stipulated order violates the statute of frauds. Under MCR 2.507(G), "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." This court rule is considered a functional equivalent of the statute of frauds.

*Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483-485; 637 NW2d 232 (2001). A settlement agreement must satisfy the court rule. *Id*. at 484-485. Nickel argues that she did not sign the stipulated order, but the court rule expressly does not require her own personal signature, and it is undisputed that the order was signed by her attorney.[2] Nickel asserts that her attorney was not authorized to sign documents on her behalf when he signed the order. However, her attorney remained her attorney of record until a month after the stipulated order was signed, so her attorney, at the very least, had the apparent authority to bind her to the stipulated order. *Nelson v Consumers Power Co*, 198 Mich App 82, 89-90; 497 NW2d 205 (1993). Further, although Nickel supports her argument with an email to her counsel that purportedly shows that she instructed her counsel not to sign anything on her behalf until she gave him permission to do so, the email actually instructs her counsel not to sign a stipulated order that was *materially different* from the agreement the parties made in open court. As will be discussed further, the stipulated order accurately reflects the settlement agreement that was made on the record. Therefore, we find no error in the probate court's denial of Nickel's motion to set aside on this basis.

Nickel also argues that the settlement agreement is void for lack of consideration. "There is a consideration if the promisee in return for a promise does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promissor or not." *Stott v Stott*, 258 Mich 547, 552; 242 NW 747 (1932). In general, "courts do not inquire into the sufficiency of consideration: a cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Innovation Ventures*, 499 Mich at 508 (quotation marks and citation omitted). In this case, when the stipulated order was signed, Nickel was still pursuing the appeal in Docket No. 366482 on behalf of the trusts even though she was no longer a trustee. The trustee, or a successor trustee, could have taken control of or terminated that appeal on behalf of the trusts. Instead, the settlement granted Nickel the power to continue pursuing that appeal, and it precluded any successor trustee from terminating Nickel's ability to continue. Moreover, the probate court stated at a motion hearing that it had interpreted the language of the trusts as permitting a successor trustee to be chosen by a majority vote of beneficiaries, not a unanimous one. As the settlement agreement provided that the successor trustee would either be chosen by unanimous agreement of the beneficiaries or be an independent trustee appointed by the probate court, the settlement therefore insured that Nickel would have input into the selection of the successor trustee, and could prevent Greg from being named to that role by agreement of the remaining siblings—something she had clearly expressed that she did not want. She was, therefore, granted something valuable in the settlement agreement, and the agreement does not fail for lack of consideration. *Id*.

Nickel also argues that there was no "meeting of the minds" regarding material terms of the settlement agreement. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006) (quotation marks and citation omitted).

---

[2] In actuality, Martinchek's counsel signed the stipulated order on Nickel's counsel's behalf, and Nickel acknowledges that he did so with Nickel's counsel's consent.

The transcript of the hearing at which the settlement agreement was discussed shows that Nickel unambiguously agreed to the settlement, albeit unhappily. Nickel was not hesitant to interrupt the proceedings to assert her objections and to voice her feelings, and eventually, after Nickel's concerns were discussed in off-the-record meetings, Nickel affirmatively agreed to the settlement agreement, the terms of which were accurately reflected in the stipulated order. Accordingly, the settlement agreement was not invalid for lack of agreement on material terms. *Id*.

## B. VALIDITY OF NICKEL'S CONSENT

Nickel alternatively argues that if she agreed to the settlement, she did so only because she was subject to duress or undue influence, and that the resulting agreement is unconscionable. We disagree.

"Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." *Hackley v Headley*, 45 Mich 569, 574; 8 NW 511 (1881). Duress may be found if one party makes a "mere threat to employ colorable legal authority to compel payment of an unfounded claim," but not where the party "threatens nothing which he has not a legal right to perform," even if the party takes advantage of the other person's preexisting misfortunes. *Id*. at 575-577. In other words, duress does not exist in the absence of *illegal* coercion and "fear of serious injury to their persons, reputations, or fortunes." *Skaates v Kayser*, 333 Mich App 61, 78-79; 959 NW2d 33 (2020) (quotation marks and citation omitted).

Nickel identifies no illegal threat to her personally.[3] She notes that there was a discussion amongst the attorneys about whether an independent trustee might be selected despite Nickel's lack of consent, but she does not explain how this constitutes a threat to perform an unlawful act or resulted in a fear of serious injury, financial ruin, or loss of reputation. *Id*. Nickel also notes that one of the attorneys stated to the probate court that she believed the parties had reached a settlement, but that no settlement had actually been reached at that time. Even if true, in light of the fact that Nickel was clearly willing to voice her objections to the settlement agreement and demand that they be resolved, and the fact that a settlement agreement was not entered until it was agreed upon by all parties, we do not agree that an attorney's (perhaps overly optimistic) misstatement to the probate court constituted duress. In sum, we conclude that Nickel has not shown that her approval of the settlement agreement and stipulated order was made under duress.

Undue influence is not one of the traditional defenses to a contract, but rather is an equitable doctrine that "may be invoked for the purpose of setting aside a conveyance or instrument such as a will, a trust, or a deed." *Cary Investments, LLC v Mount Pleasant*, 342 Mich App 304, 318 n 3;

---

[3] Nickel asserts that Martinchek told her that she was threatened by her attorney that the probate court could place her in jail if she did not agree to resign as trustee. Martinchek is not a party to this appeal, and Nickel does not have standing to assert claims on her behalf. Nickel argues that she was subject to "third party coercion" through Martinchek, but she provides no authority that any such concept exists in Michigan law, thereby abandoning it. *Mack v Natural Way, Inc*, ___ Mich App ___, ___ n 2; ___ NW3d ___ (2025) (Docket No. 367998); slip op at 4 n 2.

994 NW2d 802 (2022). Even assuming, for the sake of argument, that undue influence could be invoked to set aside a settlement agreement, it would require proof that a party to the agreement "was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the [person] to act against his inclination and free will." *In re Mardigian Estate*, 502 Mich 154, 160; 917 NW2d 325 (2018) (quotation marks and citation omitted). In this case, as discussed, there is no evidence that Nickel's will was overpowered.

A contract or contractual provision may be set aside for unconscionability only if it is *both* procedurally and substantively unconscionable, meaning a weaker party had no realistic alternative to acceptance *and* the term is so extremely inequitable that it shocks the conscience. *Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 679-680; 16 NW3d 748 (2023). In this case, even presuming Nickel was, in fact, a weaker party who had no realistic alternative but to accept the settlement agreement (despite the fact that the record shows Nickel to have been quite willing to object to proposed terms she found disagreeable), she fails to show that any of the terms are shocking to the conscience. Given the siblings' obvious inability to cooperate, it is not outrageous to conclude that none of them should have the power of trusteeship. The fact that Nickel has to shoulder the initial cost of the appeal in Docket No. 366482 is also not outrageous given that, even if she claims to be bringing it on behalf of the trusts, she appears to be the only individual with much to gain from succeeding in that appeal, and she may seek reimbursement if she succeeds. Nickel identifies no other provisions of the stipulated order that she contends are unconscionable, and the provisions she does identify are simply not extremely inequitable. *Id*.

None of Nickel's challenges to the validity of the stipulated order or settlement agreement have merit. Accordingly, the probate court correctly denied Nickel's motion to set aside the stipulated order.[4]

## IV. UNCLEAN HANDS

Nickel argues that Gregg and Scott should be precluded from bringing this action because they have unclean hands. We disagree.

"A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates." *K2 Retail Constr Servs, Inc v West Lansing Retail Dev, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367762); slip op at 16 (quotation marks and citation omitted). The "unclean hands" doctrine is a defense that will preclude a party from obtaining equitable relief if that party has willfully acted in bad faith regarding the matter in which

---

[4] Nickel also argues in her brief on appeal that the successor trustee has breached her fiduciary duty and should be removed. Such an argument was not presented to the probate court in this case and is not properly before this Court. See *Booth Newspapers*, *Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Accordingly, we decline to consider it in the context of Nickel's appeal of the probate court's order denying her motion to set aside.

the party seeks that relief.[5]  *Save Our Downtown v Traverse City*, 343 Mich App 523, 543-544; 997 NW2d 498 (2022).

Because "the clean hands maxim is designed to preserve the integrity of the judiciary, courts may apply it on their own motion even though it has not been raised by the parties or the courts below." *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975).  "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor."  *Id*. at 386 (quotation marks and citation omitted).  Unclean hands may be found even if the party's misconduct does not rise to the level of a criminal or tortious act.  *Id*. at 386.  Unclean hands may be found if a party has exploited another party's weakness or inferior position.  *Massi v Lavine*, 139 Mich 140, 143; 102 NW 665 (1905).  A party need not be completely blameless to maintain an action for equitable relief.  *Davis v Secretary of State*, 346 Mich App 445, 463; 12 NW3d 653 (2023).  Negligence does not constitute unclean hands.  *Attorney General v Ankersen*, 148 Mich App 524, 545; 385 NW2d 658 (1986).  Unclean hands cannot be established "merely because of the general morals, character or conduct of the party seeking relief" unless the party's wrongdoing is "inextricably tied to" the party's claims.  *McFerren v B&B Inv Group*, 253 Mich App 517, 524; 655 NW2d 779 (2002) (quotation marks and citation omitted).  "[T]he primary factor to be considered is whether the [party accused of having unclean hands] sought to mislead or deceive the other party."  *Stachnik*, 394 Mich at 387.

In this case, many of Nickel's arguments pertain to the 2020 litigation, largely involving the brothers allegedly spurning Nickel's offers to settle while they pursued an agenda to remove her as trustee.  Nickel's assertions of poor character, however, relate to claims in a different proceeding and, so, they cannot constitute "unclean hands" for purposes of *this* proceeding. *McFerren*, 253 Mich App at 524.

Nickel also argues that Gregg and Scott have advanced inconsistent positions in this case, because they successfully removed an amendment to the Trust that in part would have disallowed a reduction of Gregg's share of distributions, but then threatened to sue Martinchek if she reduced Gregg's share.  Nickel's argument is really an estoppel argument rather than an unclean hands argument.  See *Andros v Andros*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370930); slip op at 2-3.  In any event, Nickel has not identified how this conduct, if true, was intended to deceive or mislead other parties.  *Stachnik*, 394 Mich at 387.

---

[5] Trusts are traditionally equitable in nature.  *Fox v Greene*, 289 Mich 179, 183; 286 NW 203 (1939); *Hegadorn v Dep't of Human Services Director*, 503 Mich 231, 253-254; 931 NW2d 571 (2019); *Breakey v Dep't of Treasury*, 324 Mich App 515, 523-524; 922 NW2d 397 (2018); *Matter of Green Charitable Trust*, 172 Mich App 298, 314-315; 431 NW2d 492 (1988).  A petition to remove a trustee is now governed by statute.  See *In re Gerald L. Pollack Trust*, 309 Mich App 125, 161-163; 867 NW2d 884 (2015).  But because the nature of the claim remains the same, a petition to remove a trustee remains "generally equitable in nature" even under the statute.  See *Yopek v Brighton Airport Assoc, Inc*, 343 Mich App 415, 432; 997 NW2d 481 (2022) (quotation marks and citation omitted).

Nickel also argues that Gregg and Scott intentionally filed this case as civil action, rather than a petition for removal of a trustee, in an effort to exclude Nickel. However, Nickel has presented no evidence, but only her belief that Gregg and Scott intentionally labeled their suit as a civil action rather than merely doing so erroneously. Moreover, the probate court corrected this error on Nickel's objection. The probate court did not err by essentially refusing to sanction Gregg and Scott by dismissing their case entirely, based on an error that was easily corrected. *Ankersen*, 148 Mich App at 545.

V. SANCTIONS

Nickel also argues that the probate court erred by finding that her motion to set aside the stipulated order was frivolous, and by failing to sanction the brothers for initially bringing this case as a civil action. We disagree.

MCL 600.2591 and MCR 1.109 grant a trial court the authority to award sanctions for a frivolous action in the form of costs and attorney fees to a prevailing party. See *Pioneer State*, 330 Mich App at 146. MCL 600.2591(3)(a) defines a "frivolous" action or defense to mean that at least one of three conditions has been met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

"The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Pioneer State*, 330 Mich App at 147 (citation omitted). An argument is not frivolous just because it is wrong, and the reasonableness of that argument should be viewed in the context of the facts and circumstances available when the argument was made. *Bauer-Rowley v Humphreys*, 344 Mich App 52, 59-60; 998 NW2d 721 (2022).

A. NICKEL'S MOTION TO SET ASIDE

Nickel argues that the probate court erred by holding that her motion to set aside was frivolous. We disagree. The probate court correctly held that Nickel's motion was an attempted "second bite at the apple," and that holding is supported by the record. Prior to the filing of her motion to set aside the stipulated order, Nickel filed what she captioned an "objection" to the stipulated order in which she argued that the stipulated order did not reflect the parties' agreement as stated on the record. The probate court opined that an "objection" was not "properly postured," but it expressly chose to treat that filing as a motion to set aside the stipulated order; it then denied the motion. Nickel subsequently filed a motion to set aside the Stipulated Order, again arguing, in part, that the Stipulated Order did not comport with the agreement made on the record. The probate court again found her arguments meritless, but it found that her motion was frivolous for presenting the same arguments upon which the probate court had already ruled. We find no clear error in the probate court's finding that Nickel's motion lacked legal merit, and we find no abuse of discretion

-8-

in its decision to sanction Nickel. MCL 600.2591(3)(a)(*iii*); *Bradley*, 514 Mich at, 705; *Maldonado*, 476 Mich at 375, 388.

## B.  NICKEL'S MOTION FOR SANCTIONS

Nickel also argues that the probate court erred by refusing to sanction Gregg and Scott for initially bringing this case as a civil action. We disagree. This argument is essentially duplicative of her unclean hands argument in which she asserts that the brothers intentionally filed the 2023 Complaint improperly and without including her as a named party, and it fails for the same reasons. Again, she simply identifies no evidence beyond her own subjective belief that the brothers' error in filing the 2023 Complaint as a civil action was anything beyond understandable negligence. An error is not automatically frivolous. *Bauer-Rowley*, 344 Mich App at 59-60. The probate court did not clearly err by declining to sanction Gregg and Scott for the mistaken filing of the initial complaint in this case. *Bradley*, 514 Mich at, 705; *Maldonado*, 476 Mich at 375, 388.

Affirmed. As the prevailing parties, appellees may tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace